IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Shelley J. Ahmed and Paul O. Ahmed, *in their capacities as guardians for H.A., an incapacitated individual,*<br><br>Plaintiffs,<br><br>v.<br><br>Greenville County Sheriff's Office, Deputy Investigator Christopher Miller, Courtney Senator, Kevin Senator, Bethany Brush, James Brush,<br><br>Defendants. | ) | Case No. 6:25-cv-13901-JDA<br><br>**OPINION AND ORDER** |

This matter is before the Court on a motion to dismiss by Defendants Bethany and James Brush (the "Brushes"). [Doc. 12.] In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this matter was referred to United States Magistrate Judge William S. Brown for pre-trial proceedings.

On June 17, 2016, the Magistrate Judge issued a Report and Recommendation (the "Report") recommending that the Brushes' motion be granted in part and denied in part. [Doc. 27.] Specifically, the Report recommends dismissing claims against the Brushes for malicious prosecution, abuse of process, and intentional infliction of emotional distress ("IIED") but denying the motion to dismiss as to a claim for defamation. [*Id.*] The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. [*Id.*

at 28.] Plaintiffs filed objections on July 9, 2026. [Doc. 31.] Defendants did not file objections, nor did they file a response to Plaintiffs' objections.

**STANDARD OF REVIEW**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of any portion of the Report to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (internal quotation marks omitted)).

**BACKGROUND**[1]

Plaintiffs Shelley and Paul Ahmed (the "Ahmeds"), bringing this action on behalf of their son ("H.A."), allege that in the summer of 2023, H.A. was falsely accused of inappropriately touching certain minor children, H.S. and P.B. (the "Children"). [Doc. 1-1 ¶¶ 1, 13–16, 19–22.] H.S. is the son of Defendants Courtney and Kevin Senator (the "Senators") and was six years old during the relevant period. [*Id.* ¶ 13.] P.B. is the

[1] The facts included in this Background section are taken directly from the Complaint. [Doc. 1-1.]

Brushes' son and was five years old during the relevant period. [*Id.* ¶ 20.] The Senators, the Brushes, and the Children were neighbors and friends, and the Ahmeds lived in their subdivision. [*Id.*; *id.* ¶ 16.] Plaintiffs assert that Defendants pursued criminal charges against H.A., who was 17 years old during the relevant period, without probable cause to believe he committed the charged offenses. [*Id.* ¶¶ 12, 39, 46, 48.]

On or about June 12, 2023, Shelley Ahmed ("Mrs. Ahmed") received a phone call from Courtney Senator ("Mrs. Senator") stating that H.S. had "alleged that H.A. inappropriately touched H.S.'s private areas, attempted to pull his pants down, and 'tried to put a stick up H.S.'s butt' while H.A. was fishing at the pond under [Mrs. Ahmed's] supervision." [*Id.* ¶ 14.] Plaintiffs assert that H.S.'s allegations were not corroborated by any witnesses or other evidence and, indeed, were false but that the Senators "repeated these false allegations to other individuals living in H.A.'s subdivision and community, including but not limited to [the Brushes]." [*Id.* ¶¶ 15–16.]

On August 13, 2023, the Brushes contacted Defendant Greenville County Sheriff's Office ("GCSO") to report an alleged "'molestation of a five-year-old boy.'" [*Id.* ¶ 19.] A GCSO deputy subsequently met with the Brushes and Mrs. Senator. [*Id.*] The Brushes "informed law enforcement that H.A. was at the community's pool and was playing with younger children when H.S. saw H.A. and stated that he was not allowed to play with H.A. because H.A. 'touched [H.S.'s] penis.'" [*Id.* ¶ 20.] James Brush ("Mr. Brush") informed law enforcement that P.B. stated at that time, "Yeah, [H.A.] touched my privates too . . . . [H.A.] put a stick down my pants and touched my butt." [*Id.* (second and third alterations in original).] Bethany Brush ("Mrs. Brush") stated that "she believed this alleged incident [with P.B.] occurred at the community pool more than eighteen days prior on July 25,

2023, while she was allegedly supervising P.B. in the pool" but "admitted that she could not and did not see what they were doing." [*Id.*] While speaking with law enforcement, the Brushes stated that H.A. was "'autistic and mentally slow.'" [*Id.*]

Following the interviews, Defendant Deputy Investigator Christopher Miller ("Investigator Miller") was assigned to investigate the allegations against H.A. [Doc. ¶ 26.] Although the Children's statements of what H.A. had done were actually false and were wholly uncorroborated by any other witness or evidence, Mrs. Brush told Investigator Miller that she "wanted to proceed with an investigation 'up to and including charging' H.A." [*Id.* ¶ 15, 16, 21, 22, 27.] She and Mr. Brush also repeated the "allegations to other individuals living in H.A.'s subdivision and community as well as to the GCSO." [*Id.* ¶ 22.]

Investigator Miller contacted Mrs. Ahmed on September 14, 2023, and informed her that he was investigating H.A. for two alleged incidents of possible criminal sexual conduct. [*Id.* ¶ 32.] Mrs. Ahmed informed Investigator Miller that H.A.'s cognitive skills are equivalent to those of a five-year-old child. [*Id.* ¶¶ 12, 32.] Eventually forensic interviews of the Children were conducted in September 2023. [*Id.* ¶ 29.] Following the interviews, Investigator Miller charged H.A. as an adult with two counts of criminal sexual conduct with a minor in the third degree at the request of the Senators and the Brushes.[2] [*Id.* ¶¶ 34, 39–40.]

On October 27, 2023, while flying home from a vacation, Mrs. Ahmed received notice that three law enforcement officers in full SWAT gear were at her home to effectuate a warrant for H.A.'s arrest. [*Id.* ¶ 36.] On October 30, 2023, H.A. arrived at the Law

[2] The Complaint appears to contain an error in that it alleges that the charges were requested by "Defendants Courtney and Kevin Senator and Defendants Bethany and James *Senator*." [Doc. 1-1 ¶ 40 (emphasis added).]

Enforcement Center in response to the arrest warrant issued. [*Id.* ¶ 37.] He was handcuffed while he was escorted into the detention center and released later that same day to his parents on a personal recognizance bond. [*Id.* ¶¶ 37, 41.]

At the preliminary hearing, Investigator Miller confirmed that the reports by the Senators and the Brushes were made on the same day and that "there were no witnesses or evidence to corroborate the statements of [the Children]." [*Id.* ¶ 42.] Investigator Miller stated that he was "'working for'" the Senators and Brushes and "let them choose the ultimate charge" against H.A. [*Id.* ¶ 43.] The charges were ultimately dismissed by the Thirteenth Circuit Solicitor's Office on August 7, 2024. [*Id.* ¶ 44.]

On October 29, 2025, Plaintiffs commenced this action by filing a Complaint in the Greenville County Court of Common Pleas. [Doc. 1-1.] The action was removed to this Court on December 17, 2025. [Doc. 1.]

In the Complaint, Plaintiffs assert seven enumerated Causes of Action: (1) malicious prosecution as to all named Defendants; (2) negligence/gross negligence as to GCSO and Investigator Miller; (3) false imprisonment as to GCSO and Investigator Miller; (4) violation of § 1983 as to GCSO and Investigator Miller; (5) abuse of process as to the Senators and the Brushes; (6) defamation as to the Senators and the Brushes; and (7) IIED as to all named Defendants. [Doc. 1-1 ¶¶ 45–90.] For relief, Plaintiffs seek actual and consequential damages, punitive damages, pre-judgment interest, liquidated damages, attorneys' fees and costs, and any further relief the Court deems just and proper. [*Id.* at 18.]

## APPLICABLE LAW

**Rule 12(b)(6) Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31–32 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to

> relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## DISCUSSION

Plaintiffs object to the Magistrate Judge's recommendations to grant the Brushes' motion to dismiss as to Plaintiffs' state law claims for malicious prosecution, abuse of

process, and IIED. [*See generally* Doc. 31.] The Court will address these claims seriatim.[3]

**Malicious Prosecution Claim**

Under South Carolina law,[4] the elements of malicious prosecution are: "(1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in [the] plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage." *Law v. S.C. Dep't of Corr.*, 629 S.E.2d 642, 648 (S.C. 2006) (internal quotation marks omitted); *see also Elletson v. Dixie Home Stores*, 99 S.E.2d 384, 389 (S.C. 1957) (upholding verdict in malicious prosecution claim against a private party). "Although malice may be inferred from a want of probable cause, a want of probable cause cannot be inferred from any degree of malice." *Parrott v. Plowden Motor Co.*, 143 S.E.2d 607, 609 (S.C. 1965).

In support of their motion, the Brushes contend that the Complaint's allegations are insufficient to plead the fourth and fifth elements of the malicious prosecution claim,

---

[3] No party has objected to the Magistrate Judge's recommendation that the Brushes' motion to dismiss be denied as to the defamation claim. As to that claim, the Court has reviewed the Report, the record, and the applicable law for clear error. Finding none, the Court accepts that recommendation and incorporates it by reference.

In their objections, Plaintiffs argue that the Magistrate Judge misstated the Complaint's well pled facts in several ways. [*E.g.*, Doc. 31 at 3–6.] The Court declines to address these objections individually but has considered them in determining de novo what facts are well pled.

[4] A federal district court sitting in diversity must apply the substantive law of the state in which the court sits, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938), and in this case, the parties do not dispute that South Carolina law applies [*see generally* Docs. 12-1; 16].

malice in instituting the proceeding and lack of probable cause. [Doc. 12-1 at 3–4.] The Report agrees with the Brushes on both points. [Doc. 27 at 8–15.]

In their objections, Plaintiffs argue that the Magistrate Judge erred in recommending that their malicious prosecution claim be dismissed. [Doc. 31 at 5–15, 19.] The Court will begin by addressing probable cause and then will address malice.

***Probable Cause***

"'Probable cause' is defined as a good faith belief that a person is guilty of a crime when this belief rests on such grounds as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise." *Jones v. City of Columbia*, 389 S.E.2d 662, 663 (S.C. 1990). "In determining whether there was probable cause for instituting a criminal prosecution, only those facts and circumstances which were or should have been known to the prosecuting witness at the time he instituted the prosecution should be considered." *Melton v. Williams*, 314 S.E.2d 612, 614 (S.C. Ct. App. 1984). Accordingly, a court considers "not what the actual facts were, but what [the prosecuting party] honestly believed them to be." *Eaves v. Broad River Elec. Co-op., Inc.*, 289 S.E.2d 414, 416 (S.C. 1982).

"South Carolina follows the minority rule that the issue of probable cause is a question of fact and ordinarily one for the jury." *Jones*, 389 S.E.2d at 663. Thus, the existence of probable cause "may be decided as a matter of law [only] when the evidence yields only one conclusion." *Pallares v. Seinar*, 756 S.E.2d 128, 132 (S.C. 2014).

As for the particular offense charged, under South Carolina law:

> A person is guilty of criminal sexual conduct with a minor in the third degree if the actor is over fourteen years of age and the actor wilfully and lewdly commits or attempts to commit a lewd or lascivious act upon or with the body, or its parts, of a

> child under sixteen years of age, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of the actor or the child.

S.C. Code Ann. § 16-3-655(C).

The Court concludes that Plaintiffs have properly pled facts from which a jury could reasonably conclude that the Brushes lacked probable cause to believe H.A. committed the charged offense. Critical to the Court's analysis is a review of the facts that the Complaint alleges the Brushes actually knew. First, they knew that H.A. was "'autistic and mentally slow.'" [Doc. 1-1 ¶ 20; *see id.* ¶ 28.] Second, they knew the Senators had stated that the Senators' son, H.S., had alleged "that H.A. inappropriately touched H.S.'s private areas, attempted to pull his pants down, and 'tried to put a stick up H.S.'s butt' while H.A. was fishing at the pond under [Mrs. Ahmed's] supervision." [*Id.* ¶¶ 14, 16.] Third, the Brushes knew that "H.A. was at the community's pool and was playing with younger children when H.S. saw H.A. and stated that he was not allowed to play with H.A. because H.A. 'touched [H.S.'s] penis.'" [*Id.* ¶ 20 (alteration in original).] They also knew that P.B. said in response, "'Yeah, he touched my privates too. . . . [H.A.] put a stick down my pants and touched my butt.'" [*Id.*] Additionally, on August 13, 2023, Mrs. Brush told law enforcement that she believed the touching P.B. alleged had occurred more than two weeks earlier, on July 25, 2023, when she had been supervising P.B. at the community pool and could see him playing with H.A. but could not see what they were doing.[5] [*Id.*]

[5] Plaintiffs suggest that the Brushes also knew that H.A.'s disability was so severe that he functioned at the cognitive level of a five-year-old child. [Doc. 31 at 9 (citing Doc. 1-1 ¶¶ 20, 23, 28, 32–33).] But the Complaint does not allege anything about what the Brushes knew about H.A.'s abilities other than that he was "'autistic and mentally slow.'" [Doc. 1-1 ¶ 20; *see id.* ¶ 28.] Plaintiffs also reference many other facts that the Complaint does not allege the Brushes knew, including that H.S. told his grandmother that H.A. wanted to "play doctor" and that H.S.'s and P.B.'s statements in their forensic interviews

Considering these facts together, the Court notes in summary that the Brushes knew that six-year-old H.S. had alleged H.A. had touched him and that five-year-old P.B. had then made his allegations directly in response to H.S.'s statement at the pool about H.A. touching H.S's penis. The allegations contained little detail, and the Brushes were not aware of any corroboration of either allegation. Critically, the young age of the alleged accusers and the lack of any corroboration presents a significant hurdle to establishing the existence of probable cause.[6] *See Wesley v. Campbell*, 779 F.3d 421, 430–31 (6th Cir. 2015) ("[I]t appears no federal court of appeals has ever found probable cause based on a child's allegations absent some other evidence to corroborate the child's story.").

---

diverged in some respects from their previous statements. [*E.g.*, Doc. 31 at 8–10.] The Report, too, refers to several facts that the Complaint does not allege were known by the Brushes. [*E.g.*, Doc. 27 at 12–13 (referencing Investigator Miller's interviews of the Senators, Mrs. Ahmed, and H.S.'s grandmother; Investigator Miller's obtaining H.A.'s school records; and the consistency of the forensic interviews of the Children with their earlier allegations).] The Court does not consider these facts either.

The Court also notes that the Magistrate Judge stated that "the alleged facts indicate that on two occasions a judge found sufficient probable cause, once during the issuance of the arrest warrant and once in declining to dismiss the charge at the preliminary hearing." [Doc. 27 at 9–10 (citing Doc. 1-1 ¶¶ 34–37, 42–44).] The Magistrate Judge did not treat these judicial determinations as dispositive of the probable cause issue. [*Id.* at 10.] The Court agrees with that approach. *See, e.g.*, *Melton v. Williams*, 314 S.E.2d 612, 614–15 (S.C. Ct. App. 1984) (holding that the question of whether there was probable cause to seek an arrest warrant was properly a question for the jury despite the fact that the warrant was issued); *Canzater v. City of Columbia*, No. 2004-UP-054, 2004 WL 6248833, at *2 (S.C. Ct. App. Jan. 22, 2004) (similar).

[6] The Magistrate Judge additionally references South Carolina Code § 16-3-657, which provides, "The testimony of the victim need not be corroborated in prosecutions under Sections 16-3-652 through 16-3-658." [Doc. 27 at 13.] That statute provides that corroboration of the victim's testimony is not necessarily needed to obtain a conviction for criminal sexual conduct with a minor third degree and other similar offenses. It does not suggest that every alleged victim's allegation of sexual assault, no matter how unreliable, is sufficient, by itself, to establish probable cause to arrest. Accordingly, the Court does not find the statute to be relevant to the issues before the Court.

And, at this stage, the question is not whether this Court believes the Brushes lacked probable cause to believe H.A. had committed the charged offenses, but whether the Complaint's allegations yield *only* that conclusion. *See Pallares*, 756 S.E.2d at 132. The Court concludes that the allegations do not yield only one conclusion and, instead, a reasonable jury could find either that the Brushes had probable cause or lacked probable cause based on the alleged facts.[7]

***Malice***

In the context of a malicious prosecution claim, "[m]alice is defined as the deliberate intentional doing of a wrongful act without just cause or excuse." *Huffman v. Sunshine Recycling, LLC*, 826 S.E.2d 609, 614 (S.C. 2019) (internal quotation marks omitted). The Supreme Court of South Carolina has held:

> Malice does not necessarily mean a defendant acted out of spite, revenge or with a malignant disposition, although such an attitude may indicate malice. Malice also may proceed from an ill-regulated mind which is not sufficiently cautious before causing injury to another person. Moreover, malice may be implied where the evidence reveals a disregard of the consequences of an injurious act, without reference to any special injury that may be inflicted on another person. Malice may also be implied in the doing of an illegal act for one's own gratification without regard to the rights of others or the injury which may be inflicted on another person. In an action for malicious prosecution, malice may be inferred from a lack of probable cause to institute the prosecution.

---

[7] The Court need not specifically address the question of the sufficiency of the allegations concerning whether the Brushes had probable cause to believe that any actions taken by H.A. were taken with the required intent. Nonetheless, the Court observes that that issue would depend significantly on what facts *the Brushes* knew about how mentally limited H.A. was. *See Melton*, 314 S.E.2d at 614. Although the Complaint alleges that he had the cognitive abilities of a five-year-old child [Doc. 1-1 ¶ 12, 33, 39], it does not allege that the Brushes were aware that his limitations were that severe. Rather, it alleges that they knew he was "'autistic and mentally slow'" [*id.* ¶ 20; *see id.* ¶ 28], which could encompass a great range of abilities.

*Law v. S.C. Dep't of Corr.*, 629 S.E.2d 642, 649 (S.C. 2006).

In light of the Court's conclusion that Plaintiffs have adequately pled lack of probable cause, the Court also concludes that they have adequately pled malice. *See id.* The Court therefore denies the Brushes' motion to dismiss as to Plaintiffs' malicious prosecution claim.

**Abuse of Process Claim**

Plaintiffs next argue that the Magistrate Judge erred in recommending dismissal of their claim for abuse of process and, alternatively, that dismissal of the claim should be without prejudice and with leave to amend pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure. [Doc. 31 at 15–17.]

"The tort of abuse of process is intended to compensate a party for harm resulting from another party's misuse of the legal system." *Pallares*, 756 S.E.2d at 133. Under South Carolina law, a plaintiff claiming abuse of process must allege two essential elements: (1) "an ulterior purpose" and (2) "a willful act in the use of the process not proper in the conduct of the proceeding." *Argoe v. Three Rivers Behav. Ctr. & Psychiatric Sols.*, 697 S.E.2d 551, 556 (S.C. 2010). "An ulterior purpose exists if the process is used to gain an objective not legitimate in the use of the process." *First Union Mortg. Corp. v. Thomas*, 451 S.E.2d 907, 914 (S.C. Ct. App. 1994). The second element "comprises three components: 1) a 'willful' or overt act 2) 'in the use of the process' 3) that is improper because it is either (a) unauthorized or (b) aimed at an illegitimate collateral objective." *Food Lion, Inc. v. United Food & Com. Workers Int'l Union*, 567 S.E.2d 251, 253 (S.C. Ct. App. 2002). Importantly, "a party who simply pursues a lawsuit with a collateral purpose in mind has done nothing improper." *Id.* at 256. Accordingly, "[a]n allegation of an ulterior

purpose or ‘bad motive,’ standing alone, is insufficient to assert a claim for abuse of process.” *Id.* at 255. Rather, to sustain such a claim, the party must allege “that willful acts were taken through which the process was misapplied or abused.” *Id.* “A complaint which neglects to allege a perversion or misuse of the process by omitting facts necessary to show an *improper* willful act in the use of the process has not stated a cause of action for abuse of process and fails as a matter of law.” *Id.* at 257.

The Brushes contend that there are no factual allegations in the Complaint to support either element of this claim. [Doc. 12-1 at 4–5.] The Report agrees with the Brushes. [Doc. 27 at 15–20.] The Magistrate Judge noted that Plaintiffs assert that the Brushes’ ulterior purpose was having H.A. removed from the neighborhood pool, but that the Complaint does not plausibly allege the existence of such a purpose. [*Id.* at 16–19.] The Magistrate Judge also concluded that Plaintiffs have failed to plausibly allege a willful act because probable cause supported the issuance of the arrest warrant and it was not aimed at an illegal objective. [*Id.* at 19.]

In their objections, as to the willful act, Plaintiffs argue that they sufficiently pled that the Brushes committed a willful act by alleging that they “commandeered the State’s charging function.” [Doc. 31 at 15.] The Court disagrees. The Complaint specifically alleges that Investigator Miller “let them choose the ultimate charge with which H.A. was charged” and the Brushes chose “the higher charge.” [Docs. 1-1 ¶ 43 (internal quotation marks omitted).] No allegations suggest any misuse of process, nor is there any allegation that the Brushes would have reason to know it was improper for them to state their charging preference to Investigator Miller. Accordingly, the Court concludes that

Plaintiffs have not plausibly alleged the willful act element, and the Brushes' motion to dismiss is granted as to the abuse of process claim.

Plaintiffs request that if the Court concludes that they have failed to state a claim for abuse of process, they should be granted leave to amend their Complaint. [Doc. 31 at 17.] However, at this posture and without a proposed amended complaint to review, the Court is unable to determine whether amendment would be futile. *See* Fed. R. Civ. P. 15(a)(2) (stating that "[t]he court should freely give leave [to amend a pleading] when justice so requires"); *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) ("A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile."). Accordingly, to the extent Plaintiffs wish to amend their Complaint, they should file a motion to amend the Complaint and should submit a proposed amended complaint along with the motion so that Defendants may adequately respond to the motion and the Court may review the proposed amendments.

**IIED Claim**

Plaintiffs object to the Report's recommendation that their IIED claim be dismissed.

To state a claim for IIED under South Carolina law, a plaintiff must allege the following elements:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct;
>
> (2) the conduct was so extreme and outrageous so as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community;
>
> (3) the actions of the defendant caused plaintiff's emotional distress; and

> (4) the emotional distress suffered by the plaintiff was severe such that no reasonable man could be expected to endure it.

*Argoe v. Three Rivers Behavioral Health, L.L.C.*, 710 S.E.2d 67, 74 (S.C. 2011) (internal quotation marks omitted).

The Report concludes that Plaintiffs have not plausibly alleged conduct that is extreme and outrageous. [Doc. 27 at 24–27.] The Court agrees.

At most, Plaintiffs have not alleged that the Brushes took any significant action here other than alerting other members of the community to their child's allegations of sexual abuse and seeking the maximum charge for that conduct. Such allegations fail to state a plausible claim that the Brushes' conduct was so extreme and outrageous to support a claim for IIED. Accordingly, the Brushes' motion to dismiss is granted as to that cause of action.

## CONCLUSION

Based upon the foregoing, the Court accepts in part and rejects in part the Report and Recommendation of the Magistrate Judge, which is incorporated by reference to the extent consistent with this Opinion and Order. Accordingly, the Brushes' motion to dismiss [Doc. 12] is GRANTED IN PART and DENIED IN PART. The motion is granted as to Plaintiffs' abuse of process and IIED claims but otherwise denied. Plaintiffs' IIED claim is dismissed with prejudice, but their abuse of process claim is dismissed without prejudice.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States District Judge

October 20, 2026

Greenville, South Carolina